# LEE A. GRIDLEY CONST. CO. v. MARYLAND CASUALTY CO.

Eastern Section.   October 3, 1931.

Petition for Certiorari denied by Supreme Court, January 23, 1932.

Jas. B. Wright and Thos. Goodman, both of Knoxville, for plaintiff in error.

Anderson & Word, of Knoxville, for defendant in error.

THOMPSON, J.   On December 1, 1928, George Jackson, an employee of the Southern Paving Construction Company, was killed while in the performance of his duties by a falling smoke stack.   Both Jackson and the said Paving Company were operating subject to the provisions of the Workmen's Compensation Act.   The Maryland Casualty Company was carrying the compensation insurance of the Paving Company, and settled with the widow and children of said Jackson by paying and agreeing to pay a total of $4,300, all in accordance with the provisions of said Act.   The Maryland Casualty Company, in accordance with the provisions of Section 14 of said Act, then instituted this suit against the Lee A. Gridley Construction Company, which it alleged negligently caused the falling of said stacks and the resulting death of said Jackson.

The case was tried by the Circuit Judge sitting without the intervention of a jury and resulted in a judgment in favor of the Cas-

ualty Company for $4,300, and the costs of the cause. From this final judgment the Gridley Construction Company has appealed to this Court and has assigned errors.

The Gridley Construction Company's plant is at Knoxville, and on its yard it has a blacksmith shop, truck shed, washing rack, etc.

About eight or nine months prior to the happening of the accident the Gridley Company leased a part of its land (vacant land) adjacent to its yard to the Paving Company. The Paving Company erected on this land an office, shop, boiler shed, etc., and two tall metal smoke stacks. To prevent these stacks from falling four guy wires were attached to each of them at a point about half way up them. These wires extended to anchor posts in the ground in four different directions. One of these guy wires from one of the stacks extended across, or a part of the way across, the yard of the Gridley Company and was fastened to an anchor post on said yard. This wire extended over a wash rack of the Gridley Company upon which said company had its trucks washed and cleaned each Saturday morning. The work of putting up the buildings, stacks, etc., on the leased land, and the work of stretching and anchoring the above described guy wire as well as the other guy wires, was all done by the Paving Company, but by and with the consent of the Gridley Company.

After the construction of the Paving Company's buildings, stacks, etc., the two companies operated adjacent to each other for a period of seven or eight months prior to the accident.

On the morning of December 1, 1928, which was Saturday, something struck one of the guy wires attached to one of the smoke stacks on the Paving Company's yard and caused said stack to fall against the other stack. Both stacks fell and one of them struck and killed Jackson while he was in the performance of his duties on the Paving Company's yard.

As we see it, the only real question in the case is as to what struck the guy wire and caused the stacks to fall.

The plaintiff's testimony is to the effect that the guy wire which extended over the wash rack was high enough that an empty truck even with its bed hoisted to the highest point could pass under it and onto and off the wash rack without touching it, but that at the time in question the defendant's employee, after washing a truck with a "clam shell dipper" in it, drove off the rack and under the wire, and that the "dipper" caught the wire and pulled the stack down.

The defendant's evidence on the other hand is to the effect that a crane which the Paving Company was operating on its yard struck another guy wire and caused the stacks to fall.

We do not think it would serve any useful purpose to attempt to set out and analyze the evidence, but after carefully examining it we think the trial court was amply justified in finding that the stacks

were caused to fall by reason of the fact that the "dipper" in the defendant's truck caught the guy wire, etc., and that the Paving Company's crane was not even in operation at the time of the accident. And we think the trial court was amply justified in finding that the defendant's driver was negligent in driving the truck with the dipper in it under the wire.

We do not see how it could be held that the Paving Company was guilty of any negligence in stringing the wire. This, for the reason that it was high enough to clear any of the defendant's trucks even with their beds hoisted.

It seems to us that the fact that the Paving Company leased its land from the Gridley Company and constructed the stacks and strung the guy wire which the "dipper" struck is entirely immaterial. The defendant permitted the guy wire to extend across its land and be fastened to the anchor post there, and knowing as it must have known that if said guy wire should be broken or pulled down the stacks would likely fall and injure some of the Paving Company's employees, it was its duty to exercise ordinary care to see that it did not break or pull down said guy wire. And we think the negligence of its employee in driving the truck with the "dipper" in it under the wire and thus pulling down the stacks created a direct liability to the administratrix of Jackson.

We have considered the questions made in behalf of the defendant but are of the opinion that none of them are well taken.

It results that in our opinion there was no reversible error in the judgment of the trial court and the same will be affirmed, with costs.

Portrum and Snodgrass, JJ., concur.