TEXAS CO. *v.* BRYANT, COM'R, *et al.*

(*Nashville,* December Term, 1940.)

Opinion filed June 28, 1941.

Petition to rehear denied February 28, 1942.

(1)

SEAY, STOCKELL & EDWARDS, of Nashville, and ALBERT E. VAN DUSEN, of New York City, for complainant Texas Co.

E. F. SMITH, Assistant Attorney-General, and HAMMOND FOWLER, EMMETT L. CONNER, and WILL T. ABERNATHY, all of Nashville, for defendant S. E. Bryant.

JOSEPH MARTIN, of Nashville, for defendant J. B. Oliver.

MR. SPECIAL JUSTICE ALAN M. PREWITT delivered the opinion of the Court.

The Texas Company filed its bill in the chancery court of Davidson County for the purpose of obtaining a declaratory judgment as to its liability under the Tennessee Unemployment Compensation Law to pay contributions (1) upon the commissions earned by the twenty-four consignees distributing Texaco products on a wholesale basis under written contract, and (2) upon wages paid by such consignees to respective employees.

In the bill complainant insists that neither the consignees nor the employees of consignees are employees of the complainant, within the meaning of the Tennessee Unemployment Compensation Law, and that therefore the complainant is not liable for contributions on the earnings of said parties.

It is further insisted that, if said Act is construed to impose a tax upon the Texas Company for the benefit of such consignees, the Act is violative of Article I, section 8, and Article XI, section 8, of the Tennessee Constitution and the Fourteenth Amendment to the Federal Constitution; that Section 19(e) of the Unemployment Compensation Act, Williams' Code, Section 6901.19(e), is unconstitutional and void and that said Act so far as the year 1936 is concerned is violative of Section 20, Article I, of the Constitution of Tennessee, in that it is retrospective and impairs the obligations and contracts between the parties.

The commissioner of labor and the director of unemployment compensation are the principal defendants to the bill. In the answers these defendants insist that the consignees of the Texas Company and every person employed by such consignees are employees of the Texas Company within the meaning of the Tennessee Unemployment Compensation law and that accordingly the Texas Company is liable for the contributions on the earnings of said parties. They deny that any of the constitutional attacks on the Act are well made. In their original and amended and supplemental answers the defendants deny they were relying on Section 19(e) of said Act.

Three of the consignees of the Texas Company were made defendants to the bill, they being J. D. Hutton, Jr., P. H. Morson, and J. B. Oliver. *Pro confessos* were taken against the defendants Hutton and Morson.

An answer was filed on behalf of the defendant J. B. Oliver, he contending that he is a consignee of the Texas Company and that he is not an employee of said company within the meaning of the Tennessee Unemployment Compensation law. He further contends that his

two employees are not employees of the Texas Company and that the constitutional attacks made by the complainant are well taken.

While said Oliver is a defendant in this cause, it seems that his contentions and the insistences of the Texas Company are identical.

The real controversy, therefore, is between the Texas Company and Oliver on the one side and the commissioner of labor and the director of the unemployment compensation division on the other.

A final decree was entered in this cause on January 22, 1941.

The chancellor held that said consignees and their employees were not employees of the complainant, the Texas Company, within the purview of the Unemployment Compensation Act of Tennessee, and that it is not required to report the consignees and their employees and pay contributions into the hands of the commissioner of labor on account thereof.

The lower court was of the opinion that the complainant having made its report and paid contributions under the Unemployment Compensation Act as to the employees of the five stations it owns and operates on its own account for the year 1936, and having made these contributions without protest, and the bill not seeking to recover them, held that the complainant was not affected under the Act and has no right to question its constitutionality in the particulars indicated in the bill. The defendants, Bryant and Hake, commissioner of labor and director of unemployment compensation, respectively, appealed. The Texas Company and the defendant, J. B. Oliver, excepted to the action of the chancellor in failing to pass upon the constitutional questions raised.

The Texas Company is engaged in the business of

selling at wholesale petroleum products including gasoline, kerosene, tractor fuels, motor fuels, various industrial fuels and a number of items made from petroleum.

It maintains distribution through five bulk stations owned and operated by the company, and twenty-four consignees located at various points in the State. The appellee, J. B. Oliver, is consignee at Lebanon. In addition to distributing petroleum products under his contract with the Texas Company, Oliver is also engaged in the business of distributing Firestone Tires and Accessories made by the Firestone Company. Oliver owns the bulk station from which he distributes the Texas products and the Firestone products. The records show that he owns two trucks and that the trucks are used for both purposes, that is, to distribute Texas products and Firestone products. The record also shows that he has an investment of between $18,000 and $20,000 in his business, no part of which is furnished by the Texas Company. Oliver has two employees and he personally fixes the wages of these employees and prescribes their hours and days of work. These employees are under his control and supervision. No part of their wages is paid by the Texas Company, nor were the employees hired by the Texas Company. The complainant had no interest in the tire and accessories business operated by Oliver. Oliver does not report the hours of work performed by himself or his employees or the kind of work done. The complainant does not supervise nor direct him regarding the details of his business. The appellee, Oliver, personally looks after the sales of both the Texas products and the Firestone tires and accessories. He does not apply his entire time to the sale of the products of the complainant. The complainant has no control over his employees.

The record further shows that the complainant carries insurance for its employees, has a pension fund, and a sick benefit plan. Neither Oliver nor his employees participate in any of these. The compensation funds are for the employees of the complainant as salaried employees at the five bulk stations which it operates. On all of its employees in these stations the complainant reports to the Unemployment Compensation Division, but neither consignees nor employees of consignees are included in this report.

The contract provides, among other things, that the consignee is required: (1) to diligently market and distribute the petroleum products supplied by the Texas Company; (2) to promptly and correctly account for all of consignor's moneys, goods, products; (3) to sell the products for cash or on credit properly authorized, and not exchange them for other property for private use; (4) not to sell for less than consignor's authorized prices nor to enter into any secret agreement to reduce prices; (5) not to retain any moneys or other property of the consignor for which he is accountable; (6) to bear all expenses in connection with the operation of the bulk station plant and in the sale and delivery of the products to consignee's retail customers; (7) to furnish the trucks and other equipment required for the distribution of the products; (8) to hire at his own expense and pay the wages of all assistants and employees required for the proper and diligent operation of the bulk station plant and the distribution of the products, and assume full direction and control over and responsibility for the acts of all such assistants and employees; (9) to make bond for the faithful accounting of all money and other property of the consignor; (10) not to assign the con-

tract without the written consent of the consignor; and (11) to pay any indebtedness accruing to consignor.

Under the terms of the contract Oliver is entitled to the commissions therein specified on sales and transfers. His earnings are thus dependent on the amount of his sales. Furthermore all the expenses of operation must be borne by him, including the wages paid to his employees.

The contract further provides that the title to the products delivered to Oliver shall remain in the Texas Company until sold, and that the contract shall continue in force until terminated by either party on five days' written notice.

The sixth section of the contract provides:

"Consignee agrees to and does hereby accept full and exclusive liability for the payment of any and all premiums, contributions, and taxes for the workmen's compensation insurance, unemployment insurance and for old age pensions, annuities, and retirement benefits, now and hereafter imposed by or pursuant to federal or state laws, which are measured by wages, salaries, or other remuneration paid to persons employed by consignee in connection with the performance of this contract; and consignee further agrees to indemnify and hold consignor harmless against any liability for any such premiums, taxes, or contributions respecting consignee's employees which may be assessed against consignor. Consignee further agrees to enter into any agreement that has been or may hereafter be prescribed by any federal or state governmental body or authority in order to effectuate the foregoing purposes."

The Texas Company insists that it is not the employer of the twenty-four consignees or of those employed as consignees to market the Texas Company's products

to the general public; that it does not have any direction or control over the activities of the consignee or their employees outside of or in excess of the provisions of the written contract, and, therefore, are not obligated and bound to pay unemployment compensation, not only on behalf of the consignee but also of those employed by the consignee in the course of marketing the Texaco petroleum products, hence are not engaged in performing services in employment for appellee under the terms of the Unemployment Compensation law.

The definition of unemployment as contained in the Act is found in the Act, Williams Code, section 6901.19(g), which is as follows:

"(1) Subject to the other provisions of this subsection, 'employment' means service, including service in interstate commerce performed for wages or under any contract of hire, written or oral, express or implied."

And then the Act continues:

"(6) Services performed by an individual for wages shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the commissioner that:

"(A) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(B) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

"(C) Such individual is customarily engaged in an independently established trade, occupation, profession or business."

Appellant takes the position that the "A," "B," "C" qualifications of employment as defined in the Unemployment Compensation Act are a definition extending the definition of employment as contained in the Act beyond the master and servant or employer and employee relationship.

A careful reading of these sections makes it apparent that the "A," "B," "C" provisions just referred to were not intended as a substitute definition of employment so as to take employment as defined in the Act out of the master and servant relationship, but that on the contrary such provisions as are the provisions of the following subsection (7) were intended as exclusions from the benefit of the Act. These three factors are not given for the purpose of determining whether certain labor performances or services rendered come within the term "employment" as used in the Act. This subhead (6) applies only to cases where it has been previously determined that the work or service comes within the term "employment" as defined in the Act and that it was performed for "wages or under contract for hire." Until it has been so determined, subhead (6) has no application. These three conditions indicate a legislative intent to make an exception to eliminate from the operation of the Act certain personal services in private industry which could not be well defined by a single word, class, or designation. Take, for instance, the auto mechanic who repairs or overhauls a car. The mechanic renders personal service for remuneration and he is free from control in the doing of the service, that is, he is his own boss as to how he will do it. He also performs services outside his employer's place of business or outside the course of his con-

trol, and they are all engaged in an independently established trade or profession.

The facts in the present case are different from those presented in the case of *Gulf Refining Company* v. *Huffman & Weakley*, 155 Tenn., 580, 297 S. W., 199, 201. In that case there was a question of negligence on the part of the operator of the station. There was a contract, but the proof showed that the truck in question in that case bore a license issued to the Gulf Refining Company and displayed a sign of the company and no license had been issued to Overall for such truck. It further appeared that the taxes paid in Dyer County were paid by the Gulf Refining Company and that the post office box of the business was carried in the name of the company, and other facts were proven that the business was in fact the business of the Gulf Refining Company or that the Gulf Refining Company was exercising direction and control of it; among these, that the rent of the storehouse or warehouse in Dyersburg from which distribution was made of gasoline and other products was paid by the Gulf Refining Company; that the driver of the truck immediately responsible for the negligence alleged collected for the gasoline distributed by him with checks payable to the company and issued to customers receipts signed in the name of that company by himself, thus plainly holding himself out as the agent of the company.

In the Huffman case, Mr. Justice CHAMBLISS says:

"It is the reservation of the right of control of essential details, either express or implied, rather than the actual exercise of the right that distinguishes the relationship of responsible principal from that of the employer of an independent contractor. 'In every case the decisive question is, had the defendant the right to con-

trol in the given particular the conduct of the person doing the wrong?' Thompson on Neg. 999.''

■ Mr. Justice Lurton in *Powell* v. *Virginia Construction Co.*, 88 Tenn., 692, 697, 13 S. W., 691, 692, 17 Am. St. Rep., 925, defines an independent contractor as ''one who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to control of his employer, except as to the result of his work.''

''An independent contractor is one who contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of his work, and who has the right to employ and direct the action of the workmen independent of his employer, and free from any superior authority in the employer to say how the specified work shall be done, or what the laborers shall do as the work progresses; one who undertakes to produce a given result without being in any way controlled as to the methods by which he attains that result.'' *Odom* v. *Sanford & Treadway et al.*, 156 Tenn., 202, 299 S. W., 1045.

■ There is a distinction between the reservation of the right to control as to results and the right to control as to the means and methods by which the work shall be accomplished. The right to control the results does not establish the master and servant relationship, but the right to control the means and methods does. *Phillips* v. *Tennessee Eastman Corporation*, 160 Tenn., 538, 26 S. W. (2d), 1051.

■ The Texas Company has paid the tax on its five bulk sales stations. The stations were operated by it and its employees. We think the chancellor was correct in holding that the company, having done this, was in no position to raise any constitutional question.

We are further of the opinion that the chancellor was also correct in holding that the Texas Company and the defendants Oliver, Hutton, and Morson did not come within the meaning of the Unemployment Compensation statute.

It results that the Court finds no error in the decree of the chancellor and it is affirmed.

The costs will be divided between the complainant and defendants.

Note: Petition to rehear was denied February 28, 1942. For opinion on petition to rehear see *infra*, p. 680.