# GENERAL SHALE PRODUCTS CORP. v. REESE,

et al., for Use and Benefit of UNITED STATES
FIDELITY & GUARANTY CO.—245 S. W.
(2d) 788.

Eastern Section.   April 26, 1951.

Petition for Certiorari denied by Supreme Court, October 9, 1951.

Penn, Hunter, Smith & Davis, of Kingsport, for plaintiffs in error.

E. Lynn Minter, of Kingsport, for defendant in error.

HOWARD, J. This action was filed under the provisions of Code Section 6865 in the names of Neal Reese and C. E. Litton, d/b/a the Litton Concrete Works, for the use and benefit of the United States Fidelity & Guaranty Company, against the General Shale Products Corporation, to recover certain compensation benefits paid under the Workmen's Compensation Act by the United States Fidelity & Guaranty Company to Neal Reese, an employee of the Litton Concrete Works. The Litton Concrete Works will hereinafter be referred to as "Litton", the United States Fidelity & Guaranty Company as "Guaranty Company ", the General Shale Products Corporation as "General Shale", and in some instances as "plaintiffs" and "defendants", as they appeared in the trial court.

The plaintiffs' declaration alleges in substance that prior to March 4, 1949, Litton contracted with General Shale to do certain work on the latter's premises; that Litton had previously acquired from the Guaranty Com-

pany compensation coverage for his protection and the protection of his employees, and that on said date Neal Reese, while working within the scope and course of his employment, sustained certain bodily injuries as the result of defendant's truck negligently striking a scaffold on which he was working.

The declaration further alleges that proceedings were instituted in the Chancery Court at Kingsport, Tennessee, and that under a decree of that court Litton and the Guaranty Company became obligated and did pay Reese compensation benefits under the Workmen's Compensation Act totaling $3,178.55; that they thereby became subrogated under said section to all the rights of Reese against all wrongdoers for his injuries, and that Reese and Litton jointly and severally, and for the use and benefit of the Guaranty Company, sue the defendant for damages for said sum and demand a jury to try the cause.

To the declaration the defendant filed a general plea of not guilty and the following special pleas: (1) Contributory negligence; (2) that Reese was not a third or other person within the meaning of the Workmen's Compensation Act as would permit defendant to be sued for negligence; (3) that neither Litton nor the Guaranty Company has any right of subrogation under the said Act or under Code Section 6865; (4) that the settlement agreement entered into with Reese was void and of no legal effect since not in accordance with the Act, and (5) that any payments made to Reese by either Litton or the Guaranty Company were voluntary and not payments for which defendant is legally liable.

At the conclusion of all the evidence the defendant moved for a directed verdict which the court overruled, and the jury returned a verdict for the plaintiffs for

said amount. Motion for a new trial was made and overruled, and this appeal was granted and perfected.

It appears that prior to and on the date of the accident the defendant was engaged in the business of manufacturing brick and cinder blocks, having several employees on its payroll and operating under and subject to the Workmen's Compensation Act. Litton also had several regular employees on his payroll and was also operating under and subject to the provisions of said Act, and by an agreement between the parties, hereinafter referred to, Litton was employed by defendant to work on the construction of a building on the latter's premises, in which a scaffold was used in connection therewith. It was on this scaffold that Neal Reese, one of Litton's employees, was working at the time defendant's truck struck said scaffold, resulting in serious injuries to Reese.

The evidence is undisputed that defendant's truck ran into the scaffold on which Reese was working, tearing it away from the wall and causing Reese to slip down between the wall and the truck, which dragged him eight feet before he was released. The driver of defendant's truck, upon being asked if he had any brakes, testified:

"A. No, sir: I didn't have no brakes, because we couldn't keep brakes.

\*        \*        \*        \*        \*        \*

"Q. You didn't have any brakes and you couldn't stop? A. No, sir.

"Q. You were working for General Shale? A. Yes, sir.

"Q. You were not working for C. E. Litton? A. No, sir."

Reese sustained fractures of the transverse processes of the lumbar vertebra, 2nd, 3rd and 4th, and fractures of

the 9th, 10th, 11th and 12th ribs on the left side, together with a contusion of the right kidney. The doctor said that Reese's back injuries consisted of what is "sometimes referred to by laymen as a broken back." He suffered considerable shock and had to be given intradermic fluids upon arrival at the hospital, and as a result of internal injuries he spat up much blood. After the swelling left Reese's kidneys he was placed in a cast for several weeks. He was totally disabled for approximately 20 weeks and was unable to return to his old job because a ventral hernia developed as result of his injuries. He was discharged from medical treatment June 19, 1949. The doctor stated that he would have operated upon Reese for the hernia but Reese was afraid that the operation would kill him, and the doctor said there was a certain amount of danger in any surgery. The medical and hospital bills totalled $388.55, and were paid by the Guaranty Company as insurance carrier.

On June 15, 1949, a petition and settlement signed by Reese, Litton and the Guaranty Company was filed in the Chancery Court of Sullivan County. This petition recites that Litton is engaged in concrete work in Sullivan County, and that the petitioner, Reese, was employed by him as a cement finisher; that on March 4, 1949, a truck owned and operated by General Shale was driven against a scaffold on which Reese was working at the time, mashing and crushing him against the wall of a building, and causing injuries which are particularly described in the petition; that all of the medical bills have been paid by the Guaranty Company as insurance carrier, and by the terms of the settlement no further medical bills are to be paid; that at the time of the accident Reese was earning a weekly wage of $50.00, making his compensation rate $20.00 per week, which

has been paid for 13 weeks, totaling $260.00; that Reese is unable to work and that he is perhaps totally and permanently disabled, and that he is entitled to compensation on the basis of such disability.

The petition states that it is the contention of the employer and the insurance carrier that the only disability petitioner presently has is a hernia, which can be corrected by a simple minor operation, which petitioner has been offered at the expense of his employer but that he has declined to accept same, and the employer especially plead and relied upon petitioner's refusal as a bar to his recovery.

The petition further states that the parties realizing that long and expensive litigation might result because of the questions of law and fact involved as to any future disability, "have agreed upon a full, final and complete lump-sum settlement of $2,500.00, in addition to the amount heretofore paid, to-wit, $260.00, or a total compensation of $2,760.00, in consideration of which payment said payment shall be in full, final and complete lump-sum settlement of all claims and demands of the said Neal Reese against the employer, Litton Concrete Works, and/or its insurance carrier, or either of them, on account of said accidental injuries, * * *. Wherefore, the parties hereto have executed this instrument by their signatures hereto and the affidavit of the petitioner and employee hereto, showing a complete understanding of and agreement to the above statement of facts and settlement.''

After a hearing on the petition, the Chancellor approved the settlement and the following order was entered:

''This cause came on to be heard, by agreement of the parties in vacation as if in term time before the Honorable

430

Joe W. Worley, Chancellor, on June 15, 1949, upon reading the foregoing petition and agreed statement of facts, which had been duly filed, and the parties appearing before the Court, the employee and petitioner in person and by attorney and the employer and its insurance carrier by attorneys, and the employee being duly sworn and interrogated by the Court and the Court having fully understood the petition and settlement, it appears to the Court that the said statement of facts is true and substantially in accord with the provisions of Chapter 123 of the Public Acts of Tennessee for the year 1919 and all amendatory acts thereto, including the Public Acts of Tennessee for the year 1919 and all amendatory acts thereto, including the Public Acts of Tennessee for the year 1947, all of which is commonly known as the Workmen's Compensation Law of Tennessee; that both employee and petitioner and the employer have operated under and were subject to the terms and provisions of said law.

"It is, therefore, Ordered, Adjudged and Decreed by the Court that employee, Neal Reese, sustained accidental injuries arising out of and in the course of his employment on March 4, 1949, consisting of: 'Fractures transverse process left lumbar 2nd, 3rd, 4th and right transverse process lumbar 4. Fractures 9th, 10th, 11th and 12th ribs left and contusions of the right kidney and ventral hernia;' that said employee has been tendered an operation for the repair of said hernia, which has been declined; that said employee has heretofore been paid 13 weeks compensation, amounting to $260.00 at the weekly compensation rate of $20.00 and, in addition thereto, is entitled to the further sum of Two Thousand Five Hundred Dollars ($2,500.00), or a total compensation of $2,760.00.

"The Court further finds the said sum of $2,760.00 to be in full, final and complete lump sum settlement of all claims and demands of petitioner and employee against the employer and/or its insurance carrier, or either of them, for injuries consisting of: 'Fractures transverse process left lumbar 2nd, 3rd, 4th and right transverse process lumbar 4. Fractures 9th, 10th, 11th and 12th ribs left and contusions of the right kidney and ventral hernia', or otherwise. .

"Said petition and agreed statement of facts and release therein made and entered into by and between the parties in interest be, and the same is, hereby approved to be the order and judgment of this Court, and the parties shall in all respects conform thereto.   *   *   *''

It appears from the proof in the present case that Reese was represented by able counsel in the former proceedings, and there is no claim that Reese did not receive a fair and just settlement.

It is urged that Litton and the Guaranty Company did not enter into and have approved by the Chancery Court a valid settlement under the Workmen's Compensation Act, and, therefore, did not have any subrogation rights.

With reference to settlements by the parties under the Workmen's Compensation Act, Code Section 6877 provides as follows: "The interested parties shall have the right to settle all matters of compensation between themselves, but all settlements, before the same are binding on either party, shall be reduced to writing and shall be approved by the judge of the circuit court or of the chancery court or criminal court of the county where the claim of compensation is entitled to be made. It shall be the duty of the judge of the circuit court or of the chancery court or criminal court to whom any proposed settlement shall be presented for approval under this

act, to examine the same to determine whether the employee is receiving, substantially, the benefits provided by the workmen's compensation act. To this end he may call and examine witnesses. Upon such settlement being approved, judgment shall be rendered thereon by the court and duly entered by the clerk.''

Regarding lump sum settlements Code Section 6892 provides: ''All amounts paid by employer and received by the employee or his dependents, by lump sum payment, shall be final, but the amount of any award payable periodically for more than six months may be modified * * * ''

■ ■ Under the foregoing Code Sections it is our opinion that the former proceedings in the Chancery Court constituted a valid and final settlement between the parties. A final decree in a compensation case is final, as in any other case, unless the claimant seeking to reopen the case can bring himself within the provisions of Code Section 6892. Crane Enamelware Co. v. Dotson, 159 Tenn. 561, 20 S. W. (2d) 1045; Hay v. Woolsey, 175 Tenn. 475, 135 S. W. (2d) 933.

It is insisted (1) that the evidence shows that Litton was not an independent contractor; (2) that the defendant was liable to Reese under the Workmen's Compensation Act; and (3) that the defendant is not a third or other person within the meaning of the act against whom legal liability for damages exists.

It appears that the contract between Litton and General Shale was oral and very indefinite, there being nothing said as to whether or not General Shale would exercise control over Litton and his employees. The proof shows that Litton complied with all the provisions of the Workmen's Compensation Act; that he regularly employed 7 or more employees and carried workmen's compensation

insurance on all of them, the defendant paying no part of it, and that his employees worked exclusively under his instructions. The defendant paid no social security tax or other tax on Litton's employees, and when one of them was injured he was paid by Litton's insurance carrier and not by the defendant. Neither Litton nor his employees punched a time clock, but defendant's employees did. Litton said that he never heard that he was an employee of the defendant until the date of the trial, July 18, 1950, which was more than a year after the accident occurred; that his agreement with the defendant was on more or less a cost plus basis, so much for him and so much for his employees, and that he exercised absolute control over the method and means of doing the work. He further testified as follows:

"Q. Mr. Litton, when you were working down there did you come and go as you wanted—were you required to be on the job at any particular time—did you handle it like you wanted to? Put it this way, did you run that work? Did you boss it? Did you hire and fire? A. Yes, sir.

"Q. General Shale had nothing to say whether you hired a man or whether you fired him? A. No, sir.

"Q. Did you boss your employees? A. Yes."

Neal Reese, the injured party, said that he had been working for Litton for two years, and that he had never worked for General Shale; that Litton told him what to do and paid his wages, and that General Shale had never offered to pay him anything for his injuries.

Lee Harvey testified that he was employed by Litton, that Litton paid him and told him what to do, and that he had never been given instructions by defendant's employees.

It is admitted that at the time of the accident employees of both Litton and the defendant were working together on the same job on defendant's premises, but there is a sharp dispute as to which of the parties furnished the tools, making it a jury question.

George Sells, defendant's superintendent, admitted that Litton hired and fired his own employees, and that General Shale did not pay any social security, withholding or any other tax on Litton or his employees. He also admitted that the defendant had never paid any of Litton's employees under the Workmen's Compensation Act. He said that Litton was a sub-contractor, doing "some straight contract work; that is on a per concrete or so much per square foot basis and some was on a straight hourly basis."

Harold Campbell, defendant's assistant superintendent, said that Litton would come and go as he pleased, and that Litton used his own manner and means of getting the work done to a certain extent.

On May 20, 1949, more than two months after Reese's injury, Litton and the Guaranty Company jointly wrote the defendant as follows:

"On or about March 4, 1949, Litton Concrete Works had in its employ certain employees, among whom was Neal Reese, a colored man, who was injured while working on your premises, * * * which injuries we believe to have been caused by the negligence of one of your employees in operating a truck when the truck was driven against a scaffold or forms, knocking them against Reese, causing the aforementioned injuries.

"Litton Concrete Works and said employees, including Reese, were operating under and subject to the Workmen's Compensation Act of the State of Tennessee at the time of said accident.

"United States Fidelity & Guaranty Company was the Workmen's Compensation carrier for Litton Concrete Works at the time of said accident. * * * have heretofore paid compensation to Reese in the amount of $200.00 and are liable to further payments until Reese's recovery, and an award of compensation has heretofore been made and will be made for such payments as Reese may be entitled to until his recovery and any permanent disability that he may suffer, all under the Workmen's Compensation Act of the State of Tennessee.

&ast; &ast; &ast; &ast; &ast; &ast;

"Please take notice, therefore, that Litton Concrete Works and United States Fidelity & Guaranty Company have acquired subrogation rights as provided for in Section 6865 of the Code of Tennessee in connection with the above matters, and they are making claim against you as being legally liable for the injuries caused to Reese, the indemnity paid or payable to said Reese, including hospital, medical and compensation."

It is admitted that the foregoing letter was received by the defendant but no reply was made thereto, apparently for the reason that defendant did not consider Reese one of its employees.

Our authorities define an independent contractor as "one who contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of the work, and who has the right to employ and direct the action of the workmen independent of his employer, and free from any superior authority in the employer to say how the specified work shall be done, or what the laborers shall do as the work progresses; one who undertakes to produce a given result without being in any way con-

trolled as to the methods by which he attains that result." Odom v. Sanford & Treadway, 156 Tenn. 202, 299 S. W. 1045, 1046; Texas Co. v. Bryant, 178 Tenn. 1, 152 S. W. (2d) 627.

There are many recognized tests by which the status of an independent contractor may be ascertained. In 56 C. J. S. Master and Servant, Sec. 3(2) pages 45, 46, 47, 48, it says:

"* * * an 'independent contractor' is generally defined as one who in rendering services exercises an independent employment or occupation and represents his employer only as to the results of his work and not as to the means whereby it is to be done, and the question whether one is a servant or an independent contractor has been considered in many cases, and various tests have been applied in determining it. It has frequently been stated that it is impossible to lay down any hard and fast rule to determine whether a particular relationship is one of master and servant or contractee and independent contractor, and that each case must be determined on its own facts. Among the factors to be considered are whether the contractor is carrying on an independent business; whether the work is part of the employer's general business; the nature and extent of the work; the skill required; the term and duration of the relationship; the right to assign the performance of the work to another; the power to terminate the relationship; the existence of a contract for the performance of a specified piece of work; the control and supervision of the work; the employer's powers and duties with respect to the hiring, firing, and payment of the contractor's servants; the control of the premises; the duty to supply the premises, tools, appliances, material, and labor; and the mode, manner, and terms of payment. Ordinarily

no one feature of the relationship is determinative, and all are to be taken into consideration in determining whether or not a person is an independent contractor.

"* * * a contractee-independent contractor relationship presupposes a contract between the parties, and, in determining whether the relationship between the parties is that of master and servant or contractee and independent contractor, resort must be made in the first instance to the contract between the parties. *If there is no express contract or if the contract is ambiguous or doubtful, the conduct of the parties and all of the surrounding circumstances may be looked to in determining the relationship of the parties.* Moreover, it has been held that in determining the relationship of the parties, their conduct and the surrounding circumstances may be examined, even though there is an express, unambiguous contract, since to hold otherwise would be to invite masters to avoid their liabilities and responsibilities by paper contracts which do not express the true relationship between the parties, but it has been held that this rule applies only where the rights of third persons are involved, and that otherwise the terms of the contract, where clear, are controlling. In many cases, it is broadly stated that whether the relationship is that of master and servant or contractee and independent contractor is to be determined from the terms of the contract, the conduct of the parties, and all of the surrounding circumstances." (Emphasis supplied.)

█ Applying the foregoing tests to the disputed issues involved in this case, we think the question of whether Litton was, or was not, an independent contractor was for the jury. Tennessee Valley Appliances, Inc., v. Rowden, 24 Tenn. App. 487, 146 S. W. (2d) 845; Odom v. Sanford & Treadway, supra; Gulf Refining Co.

v. Huffman & Weakley, 155 Tenn. 580, 297 S. W. 199; Knight v. Hawkins, 26 Tenn. App. 448, 173 S. W. (2d) 163; Austin v. Bridges, 3 Tenn. Civ. App. 151; 42 C. J. S. pages 638, 639. Under the proof it was not unreasonable for the jury to conclude (1) that Litton was an independent contractor, and (2) that Reese was not defendant's employee. We think there was ample evidence to support the verdict of the jury.

With reference to the Guaranty Company's right to subrogation, Code Section 6865, which was in effect at the time Reese was injured, provides as follows: ''Whenever an injury for which compensation is payable under this chapter shall have been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee may, at his option, either claim compensation or proceed at law against such other person to recover damages, or proceed against both the employer and such other person, but he shall not be entitled to collect from both; and if compensation is awarded under this chapter, the employer having paid the compensation or having become liable therefor, may collect, in his own name or in the name of the injured employee in a suit brought for the purpose, from the other person against whom legal liability for damages exists,  *  *  *.''

The authorities are almost uniform in holding that the subrogatory rights of the employer or insurer against a third person are ordinarily coextensive with those existing in favor of the employee. American Mut. Liability Ins. Co. v. Otis Elevator Co., 160 Tenn. 248, 23 S. W. (2d) 245; Revell v. McCaughan, 162 Tenn. 532, 39 S. W. (2d) 269; Wilson v. City of Chattanooga, 179 Tenn. 234, 165 S. W. (2d) 373; Gridley Const. Co. v. Maryland Casualty Co., 15 Tenn. App. 229; 58 Am.

Jur. 360, p. 819; 19 A. L. R. 782, 786. See 27 A. L. R. 500, 37 A. L. R. 844, 67 A. L. R. 266, 88 A. L. R. 678, 685, and 106 A. L. R. 1053. See also United States Fidelity & Guaranty Co. v. Union Ry. Co., 182 Tenn. 412, 187 S. W. (2d) 615.

Complaint is made by the defendant that the trial court erred in charging the jury as follows: "Either the Circuit or Chancery Courts have a right to pass on Wokmen's Compensation cases and their judgment or findings are binding unless appealed from."

It is apparent that the court was referring to Code Secs. 6877 and 6892 (previously quoted), for further on in the general charge the court instructed the jury as follows:

"Now before the plaintiff can recover he must make out his case by what is known in law by a preponderance of the evidence. That means a greater weight of the evidence must be in support of the plaintiffs' contention. A mere preponderance, however, is sufficient.

&ast; &ast; &ast; &ast; &ast; &ast;

"* * * if you find he was injured in a larger amount than they paid him in this workmen's compensation case, you couldn't allow that overage. You can allow less, but you can't allow more, all as it appears by a preponderance of the evidence in the case."

We think that the court's charge conforms with the opinion in the case of American Mut. Liability Ins. Co. v. Otis Elevator Co., supra. [160 Tenn. 248, 23 S. W. (2d) 247.] In that case the Supreme Court said:

"In an action brought by or for the employer, under section 14, therefore, the legal liability of the defendant and the measure of damages are the same as if the action had been brought by the injured employee, to determine

which the parties are entitled to a jury; and if damages to which the injured employee is entitled are less than the compensation paid or payable by the employer, his recovery will be limited accordingly. If the damages to which the injured employee would have been entitled are greater than the amount of compensation paid or payable, the recovery will nevertheless be limited to the latter amount by the terms of the statute.

"In Blumberg v. Abbott, [159 Tenn. 586] 21 S. W. (2d) 396, it was held that a third person, not a party to an action for an award of compensation, is not bound by the adjudication therein; and that, in an action by an employer, under section 14 of the compensation statute, his liability for compensation and the amount of such liability may be questioned and disputed in defense of the action. It follows, therefore, that in such an action the employer must allege and prove his liability for compensation, and the amount thereof, as well as the other facts upon which the defendant's liability is dependent."

■ The defendant complains of the trial Court's refusal to charge Request No. 1, that if the defendant did not relinquish its right to control the doing of the work by Litton and Reese, and that if the defendant was operating under and subject to the Workmen's Compensation Act and Reese failed to give defendant notice of his intention not to be bound thereby, then you will find for the defendant. We find no error in the refusal because the general substance of the request had already been covered in the Court's charge. To deny a special request, the substance of which has been covered in the general charge, is not error. Jones v. Noel, 30 Tenn. App. 184, 204 S. W. (2d) 336; Graham v. Cloar, 30 Tenn. App. 306, 205 S. W. (2d) 764; Spivey v. St. Thomas

Hospital, 31 Tenn. App. 12, 211 S. W. (2d) 450; Carman v. Huff, 32 Tenn. App. 687, 227 S. W. (2d) 780.

It results that all assignments of error will be overruled and the judgment below will be affirmed at defendant's costs.

McAmis and Hale, JJ., concur.