Bond Brothers, Incorporated, *v.* O. C. Spence.

*(Jackson,* April Term, 1955.)

Opinion filed May · 6, 1955.

On Petition to Rehear May 18, 1955.

Petition denied June 10, 1955.

CHARLES C. MONTGOMERY and W. G. CROWLEY, both of Paris, for plaintiff in error.

GEORGE C. ROWLETT, of Martin, for defendant in error.

MR. JUSTICE PREWITT delivered the opinion of the Court.

This is a Workmen's Compensation case in which an award was made in favor of the plaintiff, Spence. This

appeal in error resulted. There is no question made as to the amount awarded to the plaintiff by the Circuit Judge. The only questions presented here are:

(1) Failure to give notice by Spence, and (2) that he was an independent contractor rather than an employee at the time he sustained the injuries complained of.

Bond Brothers, Inc., is engaged in cutting of timber and manufacturing same into a finished product, and at the time of the accident said corporation was engaged in the timber business at McConnell, Obion County, Tennessee.

It appears that in February, 1953, the plaintiff Spence went to Dresden, Tennessee, and contacted Mr. Dan Harris, who was the foreman for the defendant in its operations at McConnell, Tennessee, with the view of getting a job to haul logs for the defendant, and as a result of his trip to Dresden, he was employed to haul logs, and he equipped his truck and immediately began hauling logs to the mill at McConnell.

This operation continued on up until the 6th day of August, 1953, when Spence, while unloading his logs at the mill at McConnell, was struck by a log being unloaded from his truck and severely injured. He was immediately carried to the Bushart Hospital in Fulton, Kentucky, where his condition was such that he was not expected to live, and on the morning of August 8, 1953, he was carried from the Bushart Hospital in Fulton, Kentucky, to the Veterans Hospital in Memphis, Tennessee, for treatment, He was unconscious during the time he was in the hospital at Fulton, and after he was carried to the Memphis hospital he was in a semi-conscious state for as much as thirty days or more. His leg was broken between the knee and hip, and his head was injured to the extent that

his face was partially paralyzed, and his right arm was paralyzed to such an extent that he has been unable to write with it since he sustained the injury. From all of which it appears that the defendant is permanently injured and will not hereafter be able to perform manual labor.

■■ The Court found that the plaintiff had actual knowledge of the injuries sustained by the defendant immediately after said injuries were sustained by him, and the Court further found that on account of the severe injuries sustained by the defendant that he was unable to give notice within the thirty day period following his injuries, as required by the Statute, and that he was excused from giving such notice. In these findings we concur.

The lower court further found that the defendant was not an independent contractor at the time of the injuries sustained by him, but that he was a servant of Bond Brothers, Inc., and that the relationship of master and servant existed at the time of the injuries.

The plaintiff testified that he saw Harris when he went to Dresden, and asked him if he needed another log hauler and if he did what he paid. Harris told him that he did and that he would pay him $7 per thousand and up, according to the distance of the haul, and that he was hired on that occasion on that basis. According to the testimony of Spence the above was the entire contract. No stipulation was made about how long Spence was to haul logs, he was not given a contract to haul any specific amount of logs from any definite place.

Mr. Harris, the foreman testified, among other things as follows:

"Well, he was to haul by the thousand and I be-

lieve, if I remember right, that we had different hauls and it would be different pay. In case we had a tract of timber that was farther off, why, we would determine that as to what we would pay, the price.''

At no place does it appear that there was any contract of employment made by the plaintiff and defendant under which Spence was an independent contractor. Immediately after this date of employment Spence started to haul logs as he agreed to do. It is apparent that foreman, Dan Harris, supervised the work done by the plaintiff, and the record shows that the employment of plaintiff could have been terminated at any time. The defendant provided for the means of loading the logs on the truck of plaintiff. The plaintiff was paid by the defendant by means of checks drawn by J. H. McKinnon, the territorial supervisor of the defendant. There appears on the back of each check which plaintiff was to sign when he indorsed the check for payment the following:

''This draft is accepted in full payment for the material or services specified, and the endorser hereby warrants that the production of said material, or the rendering of the services specified, was in compliance with the requirements of the Fair Labor Standards Act of 1938, as amended.''

This provision was on the back of each check. The evidence shows that none of the checks issued to the plaintiff by defendant was for any material.

The Fair Labor Standards Act, as passed by the United States Government, has to do only with the relationship that exists between management and employees and has nothing to do with any other relationship. Consequently, the defendant by requiring the

plaintiff to sign such a stipulation on the back of each check issued to him for payment for services, acknowledged that he came within the provisions of the Fair Labor Standards Act as an employee of the defendant, and not an independent contractor, because the Fair Labor Standards Act of 1938, as amended, 29 U. S. C. A. Sec. 201 et seq., has no provisions whatsoever in regard to an independent contractor.

The lower court therefore found that plaintiff was an employee or servant of the defendant Bond Brothers, Inc.

Adverting now to the question of the failure of plaintiff to give notice within the thirty days immediately following the injuries complained of, we quote from *Tipton* v. *North American Rayon Corporation*, 181 Tenn. 434, 181 S. W. (2d) 619, 620, 621. The failure to give notice and the excuse for not giving notice is a matter for the consideration of the Court to determine whether the petitioner had a good excuse for failure to give that notice.

"It has been held by the Court that under the Compensation Act the reasonableness of the excuse for failure to give written notice of the accident is a question for the trial judge. *Marshall Construction Company* v. *Russell*, 163 Tenn. 410, 43 S. W. 2d 208; *Washington County* v. *Evans*, 156 Tenn. 197, 299 S. W. 780."

In *Watson* v. *Procter & Gamble Defense Corporation*, 188 Tenn. 494, 221 S. W. (2d) 528, 531, it was stated:

"This Court has held in the McBrayer case, supra [*McBrayer* v. *Dixie Mercerizing Co.*, 176 Tenn. 560, 144 S. W. 2d 764], that physical disability would excuse the giving of statutory notice and failure to file suit."

We therefore think that the lower court correctly held that plaintiff's physical condition excused him from giving the thirty day notice.

As to the second question involved, it appears that plaintiff talked with the foreman in Dresden, at his home, and asked him if he needed a log hauler. The foreman replied that he did and that he would give the plaintiff a job. The foreman stated to him that he would be paid $7 per thousand for the minimum distance and an increase for mileage over and above the minimum distance, and it was agreed that the plaintiff would go to work and he did commence at once.

The plaintiff testified that he worked under the direction, control and supervision of the foreman. However, the foreman said he did not exercise any control over the plaintiff but it does appear that at least on two occasions some control was exercised by Harris, when he directed that one load of logs be hauled to Paris by the plaintiff. and one load to be hauled to Paducah by Spence, when Harris accompanied him.

In *General Shale Products Corp.* v. *Reese,* 35 Tenn. App. 423, 245 S. W. (2d) 788, 793, it is said:

"Our authorities define an independent contractor as 'one who contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of the work, and who has the right to employ and direct the action of the workmen independent of his employer, and free from any superior authority in the employer to say how the specified work shall be done, or what the laborers shall do as the work progresses; one who undertakes to produce a given result without being in any way controlled as to the methods by

which he attains that result.' *Odom* v. *Sanford & Treadway,* 156 Tenn. 202, 299 S. W. 1045, 1046; *Texas Co.* v. *Bryant,* 178 Tenn. 1, 152 S. W. 2d 627.''

It does not appear that the plaintiff contracted to do ''a piece of work'' but rather he was working by the ''piece''. He was employed for no definite length of time, and had no definite separate amount of logs at any place for him to haul, but was simply working by the ''piece'' for the defendants.

In *D. M. Rose & Co.* v. *Snyder,* 185 Tenn. 499, 206 S. W. (2d) 897, 904, it is stated:

'' 'Where employment appears, the presumption is that one doing work for another is a servant, and the burden is upon the employer to prove that the employee was an independent contractor, if the employer would avoid liability upon that ground. He must show that he relinquished the right to control the employee's conduct in the manner of doing the work. * * *

'' 'The method by which one is paid is not determinative of whether he is an independent contractor or servant. The fact that Hickman was paid 35c per yard rather than so much per day, did not prevent him from being a servant. *Finley* v. *Keisling,* 151 Tenn. 464, 270 S. W. 629; *Frost* v. *Blue Ridge (Timber) Corporation,* 158 Tenn. 18, 11 S. W. 2d 860; *Mayberry* v. *(Bon Air) Chemical Co.,* supra [160 Tenn. 459, 26 S. W. 2d 148]; *Income Life Ins. Co.* v. *Mitchell,* 168 Tenn. 471, 476, 79 S. W. 2d 572, 574.' ''

We are therefore constrained to hold that the evidence shows that the relationship of employer and employee existed at the time of the injuries.

We have also considered the assignments of error as to the methods used by the trial judge in questioning the witnesses for the defendant. We find nothing prejudicial on the part of the trial judge in this respect.

It is well settled in this State that the trial judge has the right to ask such questions necessary to elicit a fact overlooked by counsel which would tend to protect the innocent or prevent the escape of the guilty. *Johnson* v. *Faucette,* 15 Tenn. App. 326, 339; *Hill* v. *State,* 73 Tenn. 725, 731.

It results that we find no error in the judgment of the trial court and it is affirmed.