24042.   WESTERN UNION TELEGRAPH CO. *v.* SMITH *et al.*

586

*Heyman, Bolding & Heyman,* for plaintiff in error.

*Burress & Dillard,* *Samuel D. Hewlett, Douglas, Douglas & Andrews,* contra.

Jenkins, P. J. 1. Legal subrogation, as distinguished from conventional subrogation where the right exists only by agreement, arises by operation of law where one having a fiduciary or other relation creating a liability or right to pay the debt of another makes the payment under such circumstances as entitle him to the rights, remedies, and securities of the beneficiary of the payment. Legal subrogation is founded upon principles of equity, and is based upon considerations of good conscience and public policy. It will not aid a mere volunteer who, without any liability or duty, legal or moral, pays an obligation of another. It has been granted and applied in favor of three general classes of persons : those who pay in the performance of a legal duty imposed by contract, statute, or rule of law; those who pay for the protection of their own rights and interests; and those whose payment is favored by public policy. See 25 R. C. L. 1312-1325, and cit.

2. The workmen's compensation act of this State and its amendments, "though in derogation of the common law, being highly remedial in character, should be liberally and broadly construed to effect their benevolent purpose." *New Amsterdam Casualty Co.* v. *Sumrell,* 30 *Ga. App.* 682 (118 S. E. 786) ; *Van Treeck* v. *Travelers Ins. Co.,* 157 *Ga.* 204 (121 S. E. 215) ; *Atkinson* v. *Atkinson,* 47 *Ga. App.* 345, 346 (170 S. E. 527).

3. Section 2, subdivision (d), of the workmen's compensation act as amended in 1922, contains the following subrogation provisions in favor of employers and insurance carriers : "When an employee coming under the provisions of this act receives an injury for which compensation is payable under this act, and which injury was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereto, the employee, or beneficiary, may take proceedings both against that person to recover damages and against the employer

for compensation, but the amount of compensation to which he is entitled under this act shall be reduced by the amount of the damages recovered. If the employee, or beneficiary of the employee, in such case recovers compensation under this act, the employer by whom the compensation was paid, or the party who was called upon to pay the compensation, shall be entitled to indemnity from the person so liable to pay damages as aforesaid, and shall be subrogated to the rights of the employee to recover therefrom to the extent of the compensation." Ga. L. 1922, p. 185 (Michie's Code, § 3154 (2, d)). In addition to the payments to the employee or his dependents based upon his wages or earnings, sections 26 and 27 of the act (Michie's Code, § 3154 (26, 27)) require the employer to furnish or cause to be furnished to the injured employee, and the employee to accept, such necessary medical attention as the nature of the accident may require. While the maximum pecuniary liability for such expense which the employer is thus obligated, without his consent, to pay is fixed at $100 for the period of not exceeding 30 days after the accident, it is further provided that thereafter "the employer may, at his option, continue to furnish or cause to be furnished, free of charge to the employee, and the employee *shall* accept, an attending physician, unless otherwise ordered by the industrial commission, and in addition such surgical and hospital service and supplies as may be deemed necessary by said attending physician or the industrial commission," and that "the refusal of the employee to accept any medical, hospital or surgical service when provided by the employer, or ordered by the industrial commission, shall bar said employee from further compensation until such refusal ceases, and no compensation shall at any time be paid for the period of suspension unless in the opinion of the industrial commission the circumstances justified the refusal, in which case the industrial commission may order a change in the medical or hospital service." The Department of Industrial Relations is thus without authority to award more than $100 for medical, surgical, and hospital expense against an employer (*Lumbermen's Mutual Casualty Co.* v. *Chandler*, 162 *Ga.* 244, 133 S. E. 237, 35 *Ga. App.* 464 (2), 134 S. E. 122; *Lloyds Casualty Co.* v. *Eubanks*, 46 *Ga. App.* 286, 167 S. E. 552) ; but the employer may, at his option and subject to the approval of the department, furnish additional medical or hospital service, and unless the refusal

of such service by the employee is approved by the department, he is debarred from further compensation during the continuance of his refusal. Where the rights of the employee as to such additional service have been safeguarded by the department's approval thereof as necessary, reasonable, and proper, the service must be deemed an obligation and payment not only for the protection of the employer and the employee, but in consonance with public policy, for the purpose both of reducing the period of disability and resulting compensation and of restoring the employee to good health as a normal, self-supporting member of society. Construing the word "compensation" as used in the subrogation provisions quoted, so as to give effect to the "beneficent purpose" of the act, that is, to encourage rather than discourage the optional furnishing of medical, surgical, and hospital treatment to employees beyond the $100 obligatory amount when reasonable, necessary, and proper, such excess, if approved by the department, will be held to be "compensation," entitling the employer to subrogation therefor, the same as for other amounts paid as a partial recompense for lost earnings, or the maximum amount of obligatory medical, surgical, and hospital service up to $100. Such excess is not paid by a mere volunteer, but comes within the rules for subrogation first stated, as a payment by the employer, not only for the protection of his own rights and interests, but in accordance with public policy for the cure or relief and ultimate benefit of the employee. This more liberal construction of the word "compensation," which is not narrowly limited to the use of the term in parts of the act as synonymous with the weekly payments based upon previous earnings, but construes the word as inclusive of other payments for medical, surgical, and hospital attention, accords with the broader use of the word in other sections of the law as inclusive of payments for such attention or for other expenses provided for by the act. Thus, "compensation" is used in the wider sense in section 4 relating to the acceptance or rejection by employers and employees of the provisions of the act "to pay and accept compensation;" in section 11, requiring employers to "insure the payment of compensation;" in section 20, affecting the liability of subcontractors "for compensation;" in section 24, providing that defects or inaccuracies in the employee's notice of accident shall not be "a bar to compensation" except as stated; in section 37, allowing "compensation" in certain

cases for accidents outside of the State; in section 38 (a), requiring the employer in death cases, "in addition to *any other* compensation, [to] pay the reasonable expenses of the employee's last sickness, and burial expenses not to exceed $100;" and in section 66, requiring employers accepting the provisions of the act "relative to the payment of compensation" to insure their "liability thereunder," or furnish to the department proof of ability "to pay direct the compensation in the amount and manner and when due as provided for in this act."

4. Under the stipulated facts of the instant case, the employer having actually paid to and for the injured employee, besides the $59.60 disability benefits, $558.90 for medical and hospital treatment, which amounts and service it was agreed were "reasonable" and "necessary for the proper care, treatment, and cure of the injuries," and "were all duly reported to the Department of Industrial Relations of Georgia, and were duly approved by said department," the employer was entitled to a subrogation for such amounts in the suit by the injured employee against the third person causing the injuries. The employee having recovered $2382 in this action, it was error to limit the subrogation to the $59.60 disability benefits paid to the employee and $100 medical and hospital expenses.

*Judgment reversed. Stephens and Sutton, JJ., concur.*