UNITED STATES FIDELITY & GUARANTY COMPANY *v.* MRS.
FORREST ELAM *et al.*

(*Nashville,* December Term, 1954.)

Opinion filed March 11, 1955.

On Rehearing May 6, 1955.

O. W. Wells and Charles L. Neely, both of Memphis, for appellant.

Marvin C. Goff, Jr., and Rosenfield, Borod, Fones & Bogatin, all of Memphis, for appellees.

Mr. Special Justice Granville S. Ridley delivered the opinion of the Court.

Jerome B. Baker was an employee of W. G. Petty & Son, Inc. On November 30, 1950, the said Baker was involved in an accident from which he suffered serious injuries. W. G. Petty & Son, Inc., and the said Jerome B. Baker were subject to the provisions of the Workmen's Compensation Law.

W. G. Petty & Son, Inc., on June 1, 1950, had procured a standard Workmen's Compensation policy from the U. S. F. & G. Company. Under this policy it paid to the said Jerome B. Baker compensation of $25 per week for 49 weeks, or a total of $1,225, and for him paid medical expenses and hospital bills in the sum of $9,060.40.

On April 25, 1951, the said Jerome B. Baker in the Circuit Court for Shelby County, brought suit for damages against Mrs. Forrest Elam, Ralph L. Stevens, and Ben J. Malone d/b/a Ben J. Malone Company, the tortfeasors. All of these parties made defense except Mrs.

Forrest Elam, against whom default judgment was taken.

On November 10, 1951, U. S. F. & G. Company filed an intervening petition seeking the recovery from all of the defendants and from the plaintiff Jerome B. Baker of compensation paid to the said Jerome B. Baker up to the time of the hearing and all of the sums paid by it for medical and hospital services to him.

On the same day that this petition was filed a settlement of the damage suit of Jerome B. Baker against Ralph L. Stevens and Ben J. Malone d/b/a Ben J. Malone Company, was entered into between Jerome B. Baker and Globe Indemnity Company, the liability carrier for Ben J. Malone Company.

This cause was submitted to the trial judge upon a stipulation of facts. This stipulation is as follows:

"In the Circuit Court of Shelby County, Tennessee
Division IV

"Jerome B. Baker
VS. #1742 T.D.
Mrs. Forrest Elam
Ralph L. Stevens
and Ben J. Malone
Doing Business as
Ben J. Malone Company

*"Stipulation*

"It is stipulated by and between the parties that the following facts are true and shall be read as evidence in this cause.

"Jerome B. Baker was an employee of W. G. Petty & Son, Inc. which was engaged in the business of installing and furnishing butane gas, and which was subject to the provisions of the Workmen's Compen-

sation Law on or about November 30, 1950, when the said Baker, while in the course of his employment, received an injury by accident under circumstances which entitled him to the benefits of the Workmen's Compensation Law.

"On June 1, 1950, prior to the date of the accident, W. G. Petty & Son, Inc. had insured its liability under the said Workmen's Compensation Law with the United States Fidelity & Guaranty Company, which issued to it a standard Workmen's Compensation and Employers' Liability Policy, No. Z-281631 which policy was in force and effect on the date of the accident.

"At the time said policy was issued, W. G. Petty & Son, Inc. for an additional premium which it paid, procured and had attached to the policy an endorsement or rider designated as 'additional medical coverage endorsement;' a copy of the policy with the endorsement attached thereto is in the record, and is made a part of this stipulation as if copied verbatim.

"Immediately upon the occurrence of the accident, W. G. Petty & Son, Inc. sent the said Baker to St. Joseph Hospital and called Dr. Beverly Ray, a physician and surgeon, to administer to him. On December 2, 1950, W. G. Petty & Son, Inc. gave written notice to the U. S. Fidelity & Guaranty Company of the accident and of said Baker's hospitalization and of the physician and surgeon engaged to treat him. The injuries sustained by the said Baker were serious and required a long period of hospitalization, surgical, medical care, and nursing, and the use of medical and surgical apparatus, appliances and medicines to

effect his cure. Such medical expense as was made reasonably necessary by the accident and was reasonably required to effect the cure and reduce disability was paid by the U. S. F. & G. Company amounting to $9,060.40, the benefits of which the said Baker accepted, and the U. S. F. & G. Company, in addition to such medical payments, paid to said Baker weekly benefits of $25.00 per week for 49 weeks, making a total of $225.00, and also paid into the Treasury of the State of Tennessee for the Second Injury Fund the sum of $10.00 as required by Sec. 6871 of the Code.

"On April 25, 1951, Jerome B. Baker, while receiving medical treatment for his injuries, and while receiving weekly payments of compensation benefits, filed suit against Ralph L. Stevens and Ben J. Malone for $150,000.00 alleging in his declaration that his injuries resulted from their wrongful and negligent acts. The defendants filed pleas denying they were guilty of any wrongful act of negligence which brought about Baker's injuries.

"During the pendency of the suit, attorneys for plaintiff, Jerome B. Baker, and for defendants, Ralph L. Stevens and Ben J. Malone, and attorneys for U. S. F. & G. Company, compensation carrier, carried on negotiations in an effect to negotiate a settlement between all the parties, but no settlement agreement was reached. One of the reasons why the negotiations failed was that the U. S. F. & G. Company claimed the full amount expended by it for medical care for the said Baker, while attorneys for the defendants and the said Baker contended that its claim for medical expense was limited to $800.00.

"After negotiations for settlement could not be

reached, the U. S. F. & G. Company, on November 10, 1951, filed its intervention in the cause. On the same day the petition for intervention was filed, Jerome B. Baker, Ralph Stevens and Ben J. Malone entered into an agreement, a copy of which is attached hereto and made a part hereof as fully as if copied verbatim.

"W. B. Rosenfield, Atty. for

Globe Indemnity Co. and Ben J. Malone

"United States Fidelity & Guaranty Co.

"By Chas. L. Neely, Atty."

There are two apparent typographical errors in this stipulation in line 23 thereof "$225.00" should be $1225.-00. In line 37 the word "effect" should be effort and this stipulation is treated accordingly.

The indemnity agreement between Jerome B. Baker and the Globe Indemnity Company is not copied herein. It suffices to say that it indemnified fully Jerome B. Baker for all sums which he might have to repay to the U. S. F. & G. Company, by reason of compensation paid by it to him and for medical and hospital services paid by it on his behalf.

The pleadings under which this stipulation of facts was agreed to as they pertain to the issues herein involved are the intervening petition of the U. S. F. & G. Company; the answer thereto of Jerome B. Baker, Ralph L. Stevens and Ben J. Malone d/b/a Ben J. Malone Company, and the replication of the intervenor to this answer. Under these pleadings Jerome B. Baker, Ralph L. Stevens, and Ben J. Malone Company, admitted liability to the intervenor in the amount of its compensation payments to Jerome B. Baker and medical and hospital expenses in the sum of $800, the maximum amount of the employer's mandatory liability under Section 6875 of the

Code. The intervenor has claimed the amounts paid as compensation and reimbursement for medical and hospital bills in the sum of $9,060.40.

These pleadings and the stipulation of facts were sufficient to present to the trial judge the question of the right of intervenor U. S. F. & G. Company to recover from Mrs. Forrest Elam, Ralph L. Stevens, Ben J. Malone and Jerome B. Baker, the sum of $1,225 compensation and $9,060.40 for medical and hospital services to Jerome B. Baker. As Jerome B. Baker, Ralph L. Stevens, and Ben J. Malone had admitted in their pleadings liability for $1,225 compensation and $800 for medical and hospital bills, there was involved in the trial court, and is involved here only the legal question of the right of the intervenor U. S. F. & G. Company to reimbursement for the sum of $8,260.40 excess medical and hospital payments, it being the amount for these items which it expended over and above the maximum limit of $800, liability for which is imposed upon the employer under Section 6875 of the Code.

The trial court held that the intervenor is subrogated only to recover compensation paid in the sum of $1,225 and $800 medical and hospital expenses paid under Section 6875 of the Code, the court holding that there is no right of subrogation on the part paid intervenor for any amount above $800 medical expenses paid, either under the provisions of the Compensation Act or the policy. The court thereupon rendered judgment for the intervenor against Jerome B. Baker, Ralph L. Stevens and Ben J. Malone in the sum of $2,025 and the costs of the cause.

Motion for new trial was duly made and overruled and the intervenor prayed and perfected its appeal to this court.

Plaintiff in error has made seven assignments of error. Assignments V and VI will be considered first. They are as follows:

"V. The Court erred in holding that the third party tort feasor and Jerome B. Baker, in making settlement agreement, had not estopped themselves from being liable for the full amount sued for. (Tr. 44, 45 and 46.)"

"VI. The Court erred in holding that the acts of Jerome B. Baker and the insuring carrier for Stevens and Malone in their failure to notify the intervenor of their intent to settle did not constitute a fraud and estoppel as to them. (Tr. 44, 45 and 46.)"

There is no fraud in the settlement entered into by and between Jerome B. Baker, Ben J. Malone and The Globe Indemnity Company. It is an ethical legal method by which these parties settled and compromised the damage suit, without admitting liability to the intervenor for the full amount of the medical and hospital expenses involved in its intervening petition. The stipulation discloses that all parties were fully informed of the facts and ably advised as to the possible legal liabilities involved. This settlement would deny to Ben J. Malone Company the right to deny its liability as a tort-feasor, but would not deny it the right to claim no liability as to the excess medical and hospital expenses claimed by intervenor.

Plaintiff in error's assignments of error Numbers I, II, III, IV and VII will be considered together because taken as a whole they raise one legal question, i.e., whether the intervenor is entitled to reimbursement by subrogation for the additional sum of $8,260.40, expended by it for medical and hospital services rendered to Jerome

B. Baker over and above the $800 liability therefor imposed upon the employer by the Statute.

The plaintiff in error claims the right to this reimbursement both under the Act and under the policy itself and also through estoppel. The defendants in error claim that intervenor's right to reimbursement for medical and hospital expenses is limited to $800 maximum because (1) this is the maximum liability of the employer for medical and hospital expenses under the Act itself, and in any payment over and above this amount acts solely as a volunteer or intermeddler; (2) under the terms of the policy the intervenor was not entitled to subrogation for the full amount of the medical and hospital expenses because intervenor's petition was predicated only upon subrogation rights granted by Section 6865 of the Code, and is not broad enough to support any claim for subrogation under the terms of the policy itself.

The question of the sufficiency of the pleadings to support a recovery based upon the terms of the policy itself will first be considered. Intervenor's petition itself alleges its right to intervene under Section 6865 of the Code; that Jerome B. Baker and W. G. Petty & Son, Inc., and intervenor were all subject to the provisions of the Compensation Act, that it has obligated itself to pay the amount of compensation that is found due and will be due under the provisions of the Act, and has been making payments under the provisions of the Act. And it further alleges that it had paid medical benefits in the amount of $6,296.64, and had bills unpaid in the amount of $3,106, and that it would continue to pay such compensation as is due to the agent or employee under the provision of the Act and under the provisions of the policy.

In an answer to this petition Jerome B. Baker, Robert

L. Stevens and Ben J. Malone admitted all of the material allegations of intervenor and their liability for the compensation $1,225, plus medical and hospital expenses up to but not exceeding the sum of $800. They thereupon further averred that all amounts over and above $800 paid by intervenor for medical and hospital expenses of Jerome B. Baker were paid by it under a separate contract entered into by intervenor with W. G. Petty & Son, Inc., by indorsement upon the standard Workmen's Compensation policy, which obligated intervenor for medical and hospital expenses in excess of the statutory limits, and that it charged a premium for said coverage and additional contract.

To this answer intervenor filed a replication in which it avers that the standard Workmen's Compensation policy issued by it to W. G. Petty & Son, Inc., and the indorsement thereon constituted one and the same contract and that the premium paid therefor was that established for this entire contract; that as part of said contract the policy provided as follows:

"The company shall be subrogated in case of any payment under this policy, to the extent of such payment, to all rights of recovery therefor vested by law either in this Employer, or in any employee or his dependents claiming hereunder against persons, corporations, associations or estates."

It further averred that it was claiming reimbursement therefor under the terms of its policy. Williams' Code of 1934, Section 8729 is as follows:

"Any pleading possessing the following requisites is sufficient: (1) When it conveys a reasonable certainty of meaning; (2) when, by a fair and natural

construction, it shows a substantial cause of action or defense."

Section 8730 is as follows:

"If defective in the first of the above particulars, the court, on motion, shall direct a more specific statement; if in the latter, it is ground of demurrer."

■ A plaintiff may recover by simply stating the facts if they entitled him to recover in any form of action. *Hall* v. *Memphis & C. R. Co., C. C.,* 15 F. 57, and the cases cited therein. *Harrison* v. *Southern Ry. Co.,* 31 Tenn. App. 377, 215 S. W. (2d) 31.

■ The intervenor in its petition simply stated the facts upon which it relied for recovery. It is true that its petition states its reliance upon Section 6865 of the Code, but as just stated the same petition also states the facts, and in determining if the petition excludes a particular basis for recovery the court must look to the averments of the petition as a whole. *Southern Ry. Co.* v. *Jackson,* 23 Tenn. App. 173, 129 S. W. (2d) 1094.

■ The common-law rule that every pleading must be taken most strongly against the pleader was abolished under Section 8729 of Williams Code of 1934, and every reasonable intendment is to be made in favor of rather than against any pleading. *State* v. *Standard Oil Co.,* 120 Tenn. 86, 110 S. W. 565; *Wheeler* v. *City of Maryville,* 29 Tenn. App. 318, 203 S. W. (2d) 924; Gilreath History of a Lawsuit, Section 152, p. 177; *Farmers State Bank* v. *Jones,* 34 Tenn. App. 57, at page 69, 232 S. W. (2d) 658; Williams' Code of 1934, Sec. 8729.

The defendant's own answer shows that it knew that intervenor's cause of action was based upon both the statute and the insurance policy itself. On page three of its answer the following language occurs:

"Respondents further assert that intervener entered into a separate contract with W. G. Petty & Son, Inc. employer of Jerome B. Baker by endorsement upon the Workmen's Compensation Policy or in some other manner obligated itself to pay to employee of W. G. Petty & Sons, Inc. or expend for their benefit sums to cover medical expenses in excess of the statutory limits for the treatment of employees injured while in the course and scope of their employment and that it charged a premium for said coverage and additional contract;"

The defendants made no motion in the court below that the petition be made more specific, or that petitioner be required to make a more specific statement of the facts upon which it relied. Intervenor's petition alleged a good cause of action based on the facts of the case. *Lazarov* v. *Nunnally,* 188 Tenn. 145, 217 S. W. (2d) 11; *Llewellyn* v. *City of Knoxville,* 33 Tenn. App. 632, 232 S. W. (2d) 568.

The next question to be considered is whether or not under the Workmen's Compensation Act itself, and under the terms of the policy the intervenor is entitled to reimbursement from Jerome B. Baker, the employee, and from Ralph L. Stevens and Ben J. Malone for $8,240.-60, it being the amount of the medical and hospital expenses incurred by intervenor over and above the $800 maximum liability fixed upon the employer by Section 6875 of Williams' Code 1934, Chapter 277, Sec. 2 of the Acts of 1949. A decision of this question requires consideration of two sections of the Code 6865 and 6875. The applicable portions of these sections of the Code are as follows:

"6865. When the injury or death for which compensation is payable under this act was caused under

circumstances creating a legal liability against some person other than the employer to pay damages, the injured workman, or his dependents, shall have the right to take compensation under the act and said injured workman, or those to whom the right of action survives at law, being dependents, may pursue his or their remedy by proper action in a court of competent jurisdiction against such other person. In the event of recovery from such other person by the injured workman, or those to whom the right of action survives, being dependents, by judgment, settlement or otherwise, the employer shall be subrogated to the extent of the amount paid or payable under this act, and shall have a lien therefor against such recovery and the employer may intervene in any action to protect and enforce such lien. * * * (1919, ch. 123, sec. 14, Modified; 1949, ch. 277, sec. 1.)"

"6875. For not exceeding six months after notice of injury, the employer or his agent shall furnish free of charge to the employee such medical and surgical treatment, medicine, medical and surgical supplies, crutches, and apparatus and hospitalization, including such dental work made reasonably necessary by accident as herein defined, as may be reasonably required. The injured employee shall accept the same; provided, that the employer shall designate a group of three or more reputable physicians or surgeons, if available in that community, from which the injured employee shall have the privilege of selecting the operating surgeon or the attending physician; provided, however, that total liability of the employer under this section shall not exceed the sum of eight

hundred ($800.00) dollars. Where there is liability to several parties for medical and hospital expenses, and the total exceeds the maximum of eight hundred ($800.00) dollars and the employer is unwilling to pay beyond such maximum, the eight hundred ($800.00) dollars shall be apportioned among the various parties in accordance with the amounts due. * * (Ib., sec. 25; 1941, ch. 90, sec. 3; 1943, ch. 117, sec. 1; 1949, ch. 277, sec. 2.)''

The intervenor earnestly insists that certain language from Section 6875 is conclusive of this question. This language is as follows:

"Where there is liability to several parties for medical and hospital expenses, and the total exceeds the maximum of eight hundred ($800.00) dollars and the employer is unwilling to pay beyond such maximum, the eight hundred ($800.00) dollars shall be apportioned among the various parties in accordance with the amounts due.''

██ This contention of intervenor is unsound. Under Section 6869 claims for compensations are not assignable and are exempt from claims of creditors. The quoted Section of 6875 merely protects the several parties furnishing medical and hospital services to the extent of their receiving the proper pro rata proportion of the $800 medical and hospital fund. At the most it indicates a faint hope that the employer will carry out a moral obligation which the Legislature was unwilling to impose as a legal liability.

The exact question now being discussed has not been decided in Tennessee, but it has been decided in other jurisdictions. It has been held that a Workmen's Compensation carrier which furnishes medical and hospital

services to an injured employee under the terms of the policy requiring it to pay more than the liability imposed by statute upon the employer for these services is not an intermeddler, or volunteer payor without interest and is entitled by subrogation to reimbursement from the tort-feasor, whose wrong caused the injury to the employee. 50 Am. Jur. 698, Sec. 22; *Western Union Tel. Co.* v. *Smith,* 50 Ga. App. 585, 178 S. E. 472; *Henry Steers* v. *Turner Const. Co.,* 104 N. J. L. 189, 139 A. 42; *Williams* v. *Campbell,* La. App., 185 So. 683.

"A payment is not voluntary when made under compulsion under a moral obligation in ignorance of the real state of facts, or under an erroneous impression of one's legal duty." 50 Am. Jur. 698; *Boney* v. *Central Mutual Ins. Co.,* 213 N. C. 563, 197 S. E. 122.

"Although there is some authority to the contrary, it is generally held that one paying the debt of another pursuant to an agreement, express or implied, for subrogation is not a volunteer, and is entitled to subrogation to the creditor's rights." 83 C. J. S., Subrogation, Sec. 9, p. 605.

In the case of *Western Union Telegraph Co.* v. *Smith,* 50 Ga. App. 585, 178 S. E. 472, it is said:

"Legal subrogation * * * arises by operation of law where one having a fiduciary or other relation creating a liability or right to pay the debt of another makes the payment under such circumstances as entitle him to the rights, remedies, and securities of the beneficiary of the payment. Legal subrogation is founded upon principles of equity, and is based upon considerations of good conscience and public policy."

The Georgia statute involved in the Western Union

Telegraph Co., supra, limits the medical and hospital liability to $100, but provides that this limit might be raised in individual cases provided the Department of Industrial Relations issued the order approving the same, and. such an order was issued.

However, in the case of *Henry Steers* v. *Turner Constr. Co.*, 104 N. J. L. 189, 139 A. 42, it was held, that under a statute similar to the Georgia statute, although the limit of liability for medical attention was Fifty ($50.00) Dollars, and for hospital expenses $50, and the Act permitted these limits to be raised upon the filing of a petition with the Workmen's Compensation Bureau, and no such petition was filed, still the employer was entitled to reimbursement from the tort-feasor for the excess medical and hospital expenses of the employee in the sum of $532.

Plaintiff in error relies upon the case of *United States F. & G. Co.* v. *Union Railway Co.*, 182 Tenn. 412, 187 S. W. (2d) 615, but this is not decisive of the case at bar. In 1945 it was decided under the then applicable portion of Section 6865 of the Code which provides:

"And if compensation is awarded under this chapter, the employer having paid the *compensation* or having become liable therefor, may collect, in his own name * * *." (Italics ours.)

This case only held that the word "compensation" as used in this Section of the Code included medical and hospital expenses. In 1949 Section 6865 was modified so that there could be no doubt of the word compensation including these medical and hospital expenses, the applicable portion of Section 6865 as modified reads:

"The employer shall be subrogated to the extent of the *amount* paid or payable under this act, and

shall have a lien therefor against such recovery * * *." (Italics ours.)

No question of excess medical or hospital bills was involved in the *United States F. & G. Co.* v. *Union Railway Co.,* supra, so it is not decisive of the case at bar.

Plaintiff in error in addition to the rights given it under the statute which have been just discussed relies upon the provisions of the policy itself. The indorsement providing the medical coverage over and above the legal liability of $800 is as follows:

"Additional Medical Coverage Endorsement

"It is agreed that:

"1. In addition to any payments which are required under Division (2) of Paragraph One (a) of the policy by the provisions of the applicable Workmen's Compensation Law, the Company will also pay the reasonable and proper cost of any additional medical, surgical, nurse or hospital services, medical or surgical apparatus or appliances and medicines which in the opinion of the Company may be reasonably necessary for the treatment of injuries sustained by any person who is entitled, on account of such injuries to the benefits afforded under Division (2) of Paragraph One (a) or who is entitled to such benefits under other terms of the policy.

"2. The Company's liability under this endorsement shall be limited to $10,000.00 on account of each person for whom benefits are payable under paragraph 1 of this endorsement.

"3. This endorsement applies only in the State of Tennessee.

"This endorsement effective as of June 1, 1950, forms a part of policy No. Z-281631 issued to W. G.

Petty & Son, Inc. by the United States Fidelity and Guaranty Company of Baltimore, Maryland.

"E. Ashbury Davis, President

"C. J. Fitzpatrick

"Secretary

"Countersigned Will Munson, Jr.

"Authorized Representative."

And it claims that by reason of Section K of the policy the company is subrogated to the rights of both the employer and the employee against the third party tortfeasor. The language of Section K is as follows:

"K. The Company shall be subrogated, in case of any payment under this Policy, to the extent of such payment, to all rights of recovery therefor, vested by law either in this Employer, or in any employee or his dependents claiming hereunder, against persons, corporations, associations or estates."

▮ The subrogation given under the compensation law is known as legal subrogation.

Subrogation given by agreement or stipulation is known as conventional subrogation. Harris Law on Subrogation Sec. 4, p. 6; Sheldon on Subrogation Section 5, p. 5.

▮ The insurance policy involved in this cause is a contract between the intervenor and the employer for the benefit of his employees. Section K of the insurance policy above quoted is a material part of this contract, and the employees' rights and obligations under such a contract are briefly stated in 12 Am. Jur., Sec. 289, p. 842 as follows:

"His rights depend upon and are measured by the terms of the contract. It has been said that before the beneficiary may accept the benefits of the contract, he must accept all of its implied, as well as express,

obligations. It has been said that if the beneficiary accepts, he adopts the bad as well as the good, the burden as well as the benefit.''

The defendant in error relies upon *United States F. & G. Co.* v. *Union Railway Co.,* 182 Tenn. 413, 187 S. W. (2d) 615; *General Shale Products Corporation* v. *Reese,* 35 Tenn. App. 423, 245 S. W. (2d) 788; *American Mutual Liability Insurance Co.* v. *Otis Elevator Co.,* 160 Tenn. 248, 23 S. W. (2d) 245, but in none of these cases was the question of excess medical and hospital expenses involved.

As above stated in *United States F. & G. Co.* v. *Union Railway Co.,* 182 Tenn. 412, 187 S. W. (2d) 615, the court only decided that the word compensation included medical and hospital expenses. In the case of *General Shale Products Corporation* v. *Reese,* 35 Tenn. App. 423, 245 S. W. (2d) 788, no question of medical and hospital expenses was involved because the settlement in that case was a lump sum settlement ratified by the chancery court in accordance with the statute.

*American Mutual Liability Insurance Co.* v. *Otis Elevator Co.,* 160 Tenn. 248, 23 S. W. (2d) 245, involves an attack upon the constitutionality of the act on the ground that the tort-feasor's constitutional rights to due process of law were denied. It was held by the court that under the Act he could have his day in court by pleading any defense available and therefore that this section of the Act was constitutional.

In the case of *General Shale Products Corporation* v. *Reese,* 35 Tenn. App. 423, 245 S. W. (2d) 788, for the use and benefit of United States F. & G. Co., the employer, the employee, and the U. S. F. & G. Company filed a petition in the Chancery court seeking the ratification of a lump sum settlement. This settlement was ratified by the

chancery court and then the employer, and the employee for the use and benefit of U. S. F. & G. Company brought suit against the tort-feasor. The court very properly held that the defendant tort-feasor could make any defense originally available against the employee, and that the recovery for the use and benefit of the U. S. F. & G. Company was limited to the amount it had paid the injured employee; that the judgment for damages could be for less but could not be for more. There was no question of excess medical or hospital services involved because as above stated it was a lump sum settlement between the parties ratified by the chancery court.

In addition defendant in error relies strongly upon the case of *DeRoode* v. *Jahncke Service, Inc.,* La. App., 52 So. (2d) 736, 744. This case does hold that the employer's payment of excess medical and hospital expenses over and above the amount for which he is legally liable, does not entitle him to subrogation for such excess, but the Louisiana statute under which this case is decided differs in several ways from the Tennessee statute. It provides that the employer and the employee may, by *written agreement,* between themselves provide for compensation over and above the compensation to be awarded under the provisions of the Act. L S A-Revised Statutes, Vol. 3, p. 370; Unemployment Compensation Statutes, Sec. 1165. There was no written agreement entered into for such additional compensation.

In this Louisiana case there was no question of conventional subrogation involved. In fact the court indicated that had there been such conventional subrogation it would have been sustained, the Court says:

"The employer could, of course, pay such additional amounts and, by conventional subrogation from the

employee, obtain the right to demand those amounts back from the person at fault, but it is not shown here that there has been any such conventional subrogation.''

And continuing:

''It is true that in the policy which the employer secured from its insurer, Liberty Mutual Insurance Company, the intervenor, it was provided that the Liberty Mutual should be subrogated to all the rights of the *employer* (italics ours), but when the additional amounts were paid, no conventional subrogation was taken from the employee himself, and since the right to recover for the amounts expended existed primarily in the employee, it was from the employee that the subrogation should have been secured.''

In the case at bar Section K of the policy proports to subrogate to the carrier both the right of the employer and the employee.

In the DeRoode case the court did not discuss a conventional subrogation of the carrier to the rights of the employee raised by an implied agreement on the part of the employee for such subrogation.

Our Supreme Court has held that where a legal obligation exists to pay any amount of medical and hospital bills under the Workmen's Compensation Act, an agreement by the employer to pay over and above that amount would be implied by his taking the employee to the hospital. *Weakley County Hospital* v. *Kentucky-Tenn. Light & Power Co.,* 171 Tenn. 662, 107 S. W. (2d) 226.

There is reported from Louisiana a case which holds directly to the contrary of the DeRoode case. This case was decided in 1938. It is *Williams* v. *Campbell,* La. App., 185 So. 683, in which the insurer paid $901.50 medical and

hospital expenses, when at that time $250 was the mandatory limit of the statute. The $901.50 had been awarded in a proceeding in which the employer, the employee and the carrier joined. Th defendant tort-feasor contended that the recovery for medical, hospital and physician's bills was limited to $250, but the court held that the tort-feasor was liable for the $901.50 of medical and hospital and surgical bills, and that the carrier was entitled to this full amount reversing the lower court to this extent.

Defendant in error also relies upon the case of *Ezell* v. *Tipton,* 150 Tenn. 300, 264 S. W. 355. However, this case differs from the case at bar in several material matters. It is a suit between the employer and the employee. The employer expended $324 for surgical and medical attention to the petitioner, whereas the Act limited his liability to $100. He testified that he voluntarily expended $224 for humane reasons with no understanding of any kind with his employee. However, he sought credit of this $224 upon the compensation owed by him to the injured employee. Under Section 6869, employees' claims for compensation are non-assignable and are exempt from the claim of creditors, although the court did not base its decision upon this ground. Of course, there is no question of conventional subrogation involved.

 An employee and tortious third party may not by settlement agreement made without its knowledge or consent defeat the rights of a Workmen's Compensation Insurance carrier, but becomes jointly liable to it. *Fort Worth Lloyds* v. *Haygood,* 151 Tex. 149, 246 S. W. (2d) 865; *Traders & General Ins. Co.* v. *West Texas Utilities Co.,* 140 Tex. 57, 165 S. W. (2d) 713; *Henry Steers* v. *Turner Const. Co.,* 104 N. J. L. 189, 139 A. 42.

To hold otherwise would permit the injured employee to recover twice for the same medical and hospital services. This is not permitted. *Keen* v. *Allison,* 166 Tenn. 218, 60 S. W. (2d) 158; *Walters* v. *Eagle Indemnity Co.,* 166 Tenn. 383, 61 S. W. (2d) 666, 88 A. L. R. 654; *Wilson* v. *City of Chattanooga,* 179 Tenn. 234, 165 S. W. (2d) 373; *Watson* v. *Borg-Warner Corp.,* 190 Tenn. 209, 213, 228 S. W. (2d) 1011; reserving judgment upon the question of double recovery; Williams Code of 1934, 1952 Supplement, Sec. 6865.

In his cause against Mrs. Forrest Elam et al. in the Circuit Court of Shelby County, Jerome B. Baker sued for thousands of dollars of hospital, medical and doctors' bills which he had expended. In his settlement with Ben J. Malone he was recompensed for these, as he was also recompensed by intervenor.

■ An employer who provides for the payment of excess medical and hospital services is not an intermeddler or a volunteer because:

(1) He is satisfying a moral obligation.

(2) He has a substantial interest in restoring his employees to service and in maintaining good will by the knowledge of the protection afforded them.

(3) The provision of such excess medical and hospital protection is in accord with the beneficent intention of the Legislature in passing the Workmen's Compensation Act.

(4) The provision of adequate medical and hospital services for the rehabilitation of every injured employee is in keeping with sound public policy.

In the case at bar the intervenor furnished the excess medical and hospital services under an agreement in its policy providing for conventional subrogation to the

right of the employer and employee against the third party, and the employee's agreement to such subrogation will be implied by his having accepted the payment from intervenor of these excess medical and hospital services.

Intervenor met its obligations to Jerome B. Baker under the policy without quibble, but had Jerome B. Baker been forced to bring suit any judgment against intervenor under the policy would certainly have been predicated upon the enforcement of this right of subrogation. The clause in the policy so providing was a material part thereof, and in some measure the premium which intervenor received for assuming this liability must have been based upon its right to subrogation against tort-feasors.

To hold otherwise in the case at bar would permit the tort-feasor to escape, to the extent of excess medical and hospital services, the consequences of his wrongdoing.

The intervenor U. S. F. & G. Company will have and recover of Jerome B. Baker, Ralph L. Stevens and Ben J. Malone Company the sum of $10,285.40, in lieu of the $2,025.40 adjudged in its favor by the Circuit Court of Shelby County, and as thus modified the judgment of the Circuit Court of Shelby County will be affirmed.

Interest will be allowed upon this judgment from November 10, 1951, the date of the settlement. Williams Code of 1934, Secs. 7306, 7307 and 7308; *Johnson* v. *Cincinnati N. O. & T. P. R. Co.,* 146 Tenn. 135, 240. S. W. 429.

The costs of this appeal are hereby by the Court adjudged against defendants in error.

### On Petition to Rehear

In defendant in error's petition to rehear three points are made.

## I

That there was an error of law in the original opinion holding that intervenor's pleadings were sufficient based upon the terms of the Workmen's Compensation policy because Sections 8729 and 8730 of Williams' Code of 1934 cited as supporting the sufficiency of the pleadings were inapplicable. Defendant in error asserts that the entire Chapter 9, Articles I through XII, Sections 8725 through 8789 inclusive of Williams Code of 1934 are inapplicable because the first Section thereof limits its provisions to causes in which pleadings are necessary and are not otherwise expressly prescribed.

This Section is as follows:

Section "8725. Pleadings in all legal proceedings. —The pleadings treated of in this chapter apply to all actions at law, and to all legal proceedings for the redress of civil injuries in which pleadings are necessary and not otherwise expressly prescribed."

This cause as instituted by the employee in the Circuit Court of Shelby County was simply a damage suit for personal injuries laid in tort. It was governed by all applicable sections of Chapter 9, supra. This Chapter contains the general provisions pertinent to pleadings and proceedings in such cases.

Section 6865 of Williams' Code of 1934, Chapter 123, Section 14 of the Public Acts of 1919 as modified by Chapter 277, Section I of the Public Acts of 1949 gives the employee the right to pursue his remedy by proper action in a court of competent jurisdiction against such tort-feasor. It gives to the employer the right to intervene in such a suit. It does not go further and lay down the form of the pleadings by which the employer may intervene or the pleadings and proceedings which are to be pursued by

the employer, the employee or the tort-feasor after such intervention. Therefore, the pleadings and proceedings under the intervention are governed by the applicable general provisions for such laid down in the same Chapter 9, supra. Section 8740 of Williams' Code of 1934 is part of this same Chapter 9. It is as follows:

"8740 4617 (2896). Declaration.—The declaration shall state the plaintiff's cause of action. It may contain several statements or counts. But where several distinct causes of action against the same party are joined, the court may direct separate trials of the issues. Whenever as a result of tortious conduct of another, injury shall result to any particular person, and from such injury, there shall arise more than one cause of action against the wrongdoer, solely by virtue of the injury to such particular person, it shall be lawful to prosecute all such causes of action in one suit, averring the several causes of action in separate counts of the declaration. (1945, ch. 23, sec. 1.)"

Therefore the general provisions governing pleadings and proceedings contained in said Chapter 9 and Code Sections 8724-8789 govern the pleadings in this cause. However, if the intervening petition were not sufficient under this Chapter it would be sufficient under Sections 8564 and 8565 of Williams Code of 1934. These Sections are as follows:

"8564 4438 (2747). Action on the case for torts and penalties.—All wrongs and injuries to the property and person, in which money only is demanded as damages, may be redressed by an action on the facts of the case. Penal actions may be brought in the same form. (1849-50, ch. 141.)

"8565 4439 (2748). Counts in tort and contract may be joined.—Whenever the facts of the case entitle the plaintiff to sue for breach of contract, or, at his election, for the wrong and injury, he may join statements of his cause of action in both forms, or either."

Of course, plaintiff in error's original petition shows that it was the insurer under the Workmen's Compensation Act and under Section 6852(a) as such was entitled to all of the rights of the employer.

In the lower Court there was no motion for separate trials of the right of action upon subrogation given by statute and the right of conventional subrogation given in the policy itself. The Legislature in granting the right of intervention to the employer provided a simple and speedy method for the employer, the employee and the tort-feasor's settling the controversy in one suit.

The Workmen's Compensation Act itself contemplates that proceedings in compensation cases, subject to the special provisions and limitations of the Workmen's Compensation Law, shall be conducted as are other non-jury civil cases. In part Williams Code of 1934 Section 6885 provides among other things as follows:—

"The county judge or chairman shall have the power to subpoena witnesses, administer oaths and punish witnesses for contempt; and in short, he shall have such powers in conducting hearings under this chapter as are possessed by the judge of the circuit courts as courts of general jurisdiction."

It also says:

"The cause shall be heard by the circuit judge without a jury and as other nonjury civil cases are heard in the circuit court."

## II

 The second point made by the defendants in error is that complainant in error was a volunteer or intermeddler for the sums, in the amount of $2,763.76, paid after November 10, 1951, and that it was error of law and fact for the original opinion to find and hold to the contrary.

This is not sound. The stipulation of facts in this case contains the following:

"Immediately upon the occurrence of the accident, W. G. Petty & Son. Inc. sent the said Baker to St. Joseph Hospital and called Dr. Beverly Ray, a physician and surgeon, to administer to him. On December 2, 1950, W. G. Petty & Son, Inc. gave written notice to the U. S. Fidelity & Guaranty Company of the accident and of said Baker's Hospitalization and of the physician and surgeon engaged to treat him."

Section 6865 subrogates the employer "to the extent of the amount paid or *payable* under this act."(Italics ours.)

In its original petition which was filed the same day as the settlement, November 10, 1951, intervenor alleges that it had paid $6,296.64 medical benefits and had bills unpaid in the amount of $3,106, and that it would continue to pay such compensation to the injured employee under the provision of the Act and under the provisions of the policy.

Therefore the defendant in error had already incurred a legal liability to those furnishing the hospital and medical benefits which at that time were paid, and also those *payable. Weakley County Hospital* v. *Kentucky-Tennessee Light & Power Co.,* 171 Tenn. 662, 107 S. W. (2d) 226.

Under the statute itself it was subrogated for the amount of the additional compensation and medical expenses *"payable."*

Intervenor had already incurred a legal and enforceable obligation to the employer under the terms of the policy to pay all hospital and medical expenses up to $10,000, and it had incurred these same legal and enforceable obligations to those furnishing these medical benefits. The record discloses that Jerome B. Baker and the Globe Indemnity Company made their settlement on November 10, 1951; that intervenor had to make a motion filed March 15, 1953, to learn the terms of this and that it was not actually filed until November 18, 1953.

## III

Defendant in error's third point is that interest was improperly allowed on the entire judgment from November 10, 1951, the date of the settlement.

In allowing interest on the entire sum from this date it was overlooked that on November 10, 1951, intervenor had not expended this entire sum. Intervenor's petition filed on November 10, 1951, states that on that date it had paid out the sum of $6,296.64 in medical benefits and the sum of $1,100 in compensation. The stipulation was filed in this cause on November 18, 1953, showing the payment at that time of the entire sum of $10,285.40.

Thus at the date of the settlement intervenor had actually expended the sum of $7,396.64, and it does not show in the record when the remaining sum of $2,888.76 was expended by it but it does show that it had been expended by November 18, 1953.

The settlement of November 10, 1951, stands in lieu of a judgment which on that date should have been rendered

for the amount due intervenor at that time. So under Code Sections 7306, 7307 and 7308 interest will be allowed from November 10, 1951, upon the sum of $7,396.64. However, as pointed out by defendant in error intervenor is not entitled to interest from that date upon sums which it had not then expended in the absence of a showing that it had incurred liability for interest upon the same. There is no showing in the record that it had expended these sums until November 18, 1953, when the stipulation was filed in this cause. Therefore the opinion of the Court heretofore rendered will be modified so as to allow interest upon $7,396.64 from November 10, 1951, and upon the remainder $2,888.76 from November 18, 1953.