AMERICAN DREDGING COMPANY,
Appellant,

v.

GULF OIL CORP., Standard Oil Company, Atlantic Pipe Line Company, American Oil Company, Texas Company, Atlantic Refining Co., Pioneer Oil Company and Herman S. Stoffman and Benjamin Stoffman.

No. 13070.

United States Court of Appeals
Third Circuit.

Argued April 4, 1960.

Decided April 21, 1960.

As Amended on Denial of Rehearing
Sept. 13, 1960.

Thomas E. Byrne, Jr., Philadelphia, Pa., (Mark D. Alspach, Krusen, Evans & Shaw, Philadelphia, Pa., on the brief), for appellant.

Thomas F. Mount, Philadelphia, Pa. (Rawle & Henderson, Richard W. Palmer, Roy W. Johns, Philadelphia, Pa., on the brief), for appellees, Atlantic Pipe Line Co. and Atlantic Refining Co.

John T. Clary, Thomson F. Edwards, John B. Hannum 3d, Pepper, Hamilton & Scheetz, Philadelphia, Pa., on the brief, for Gulf Oil Corp., appellee.

Pyne, Brush, Smith & Michelsen, New York City, O'Neill & Russell, Philadelphia, Pa., on the brief, for appellee, Texas Co.

Kirlin, Campbell & Keating, New York City, and Cavanaugh & Murphy, Philadelphia, Pa., on the brief, for appellee, Esso Standard Oil Co.

Howard R. Detweiler, Philadelphia, Pa., on the brief, for appellees Pioneer Oil Co. and Herman S. Stoffman and Benjamin Stoffman.

Before McLAUGHLIN, STALEY and FORMAN, Circuit Judges.

PER CURIAM.

While appellant's flotilla of a tug and two scows was proceeding down the Schuylkill River, Pennsylvania, the river surface in the vicinity became ignited. As a result two of libellant's seamen lost their lives, two others were injured and the tug was damaged. In suits based on the deaths, appellant was held responsible. Thereafter it filed this libel against certain landowners along the river in the fire area, alleging their responsibility for the fire and seeking indemnity for its losses resulting therefrom

The district court on exceptions to the libel dismissed it. In an exhaustive opinion, carefully following the law as it at present stands in this circuit,[1] the court could find no relational basis or legal justification for imposing an indemnitor's liability on the respondents in the circumstances of this case. We must agree.

## Sur Petition for Rehearing

■ The argument in this case on exceptions to the libel covered just the deaths and personal injuries arising out of the accident above described and for which appellant had been held responsible. There was no attempted distinction suggested between the personal injury phase and the damage to appellant's tug. Indeed the latter was not even mentioned.

It is true that in the libel filed January 6, 1959 (the accident involved occurred November 18, 1952) there is an allegation in the same paragraphs which assert the personal injury situation, of damage to the tug and loss of its use. However, the whole force of the presentation to the district court centered on the death claims which had been reduced to judgment and the personal injury claims which appellant had settled and paid. As a result the court decided only the controversy which had been argued to it.

Appellant, on its petition for rehearing to this court, contends that the district court dealt with its property damage claim "only sub silentio" and asserts that the property damage cause of action rests on grounds other than those upon which it based its suit for contribution or indemnification with respect to its alleged damages arising out of the personal injury and death claims.

As we read the district court opinion we think it clear that, because of the manner in which the exceptions to the libel were argued, the questions in connection with the property damage to the tug and loss of its use were never fairly presented to the trial court and never passed upon.

The judgment of the district court will be affirmed as to its denial of contribution or indemnity to appellant by appellees arising out of the death and personal injury claims in this matter. As to the property damage to the tug and loss of its use claims, the judgment of the district court will be vacated and that part of the case remanded for proceedings as may be indicated, not inconsistent with this opinion.

The petition for rehearing will be denied.

BIGGS, Chief Judge (as to rehearing, concurring in part and dissenting in part).

American Dredging Company has stated two causes of action in its libel against Gulf Oil Corporation and other riparian landowners along the Schuylkill River at Philadelphia who will be referred to collectively hereinafter as "Gulf". American has claimed, first, damages for injuries to its tug and scow caused by a fire which resulted from the ignition by a marking light on American's barge of volatile petroleum products which were lying on the surface of the river, allegedly because of the manner in which Gulf operated its waterfront facilities. American, second, seeks to recover from Gulf monies paid by American in satisfaction of judgments rendered against it in favor of two seamen employed by American who died as a result of injuries incurred in the fire.

In Kernan v. American Dredging Co., 1958, 355 U.S. 426, 78 S.Ct. 394, 397, 2 L.Ed.2d 382,[1a] Milan's administrator, Kernan, was permitted to recover against American by the Supreme Court "in the absence of any showing of negligence" because of a "defect or insufficiency of the flotilla's [the scow's] lighting equipment" due to a violation of the Coast Guard Regulation requiring the marking

---

1. King v. Waterman SS Corporation, 3 Cir., 1959, 272 F.2d 823, certiorari granted 80 S.Ct. 754.

1a. Cf. In re Petition of American Dredging Co., 235 F.2d 618 (3 Cir. 1956) and In re Petition of American Dredging Co., 141 F.Supp. 582 (E.D.Pa.1956).

light on the scow to be at a height of no less than eight feet above the water.[2] The Supreme Court referring to principles of law determined by it to be applicable in cases arising under the Federal Employers' Liability Act and the Jones Act, applied those principles in the Kernan case and imposed liability on American because the death of the seaman arose from a breach of the Coast Guard Regulation even though the Regulation was not intended to prevent the kind of action which contributed to the seaman's injury and death. See Id., supra, 355 U.S. at pages 430–437, 78 S.Ct. 394.

That American was held liable to the seaman's administrator for damages does not bar American's action against Gulf for the damage suffered by American's tug and scow because Gulf cannot acquire the benefits of the Jones Act which applies only to seamen. In short American's rights against Gulf with respect to the damage suffered by the tug and scow cannot be affected by the status accorded the seaman against American. This aspect of the case must be viewed as if no seamen had been injured. The court below, however, made no specific ruling on American's claim for direct damage to its tug and scow and apparently treated both of American's claims alike.[3] I therefore concur in the view of this court that the case must be remanded to the court below for its determination of the issues presented by this phase of the case.

In respect to American's claim for indemnity or contribution from Gulf, it is conceded that the Coast Guard Regulation violated by American was designed only to prevent maritime collisions at night. American, therefore, cannot, at this, the pleading stage of the case at bar, be deemed to be a tortfeasor within the ordinary meaning of the term for there has been no showing of any prohibition of a fire or a light in the river area where the accident occurred or proof that American knew or should have known that the water had been covered with volatile petroleum products by Gulf. This point is made clearer if we assume, arguendo, that American's scow not only had the light on its deck two and one-half feet above the water but also had a marking light eight feet above the surface of the river as required by the Regulation. Under such circumstances the fire would have occurred despite the fact that the requirements of the Regulation had been met.

It follows that the Supreme Court accorded a special status to the deceased seaman under the two federal acts referred to. This status is analogous to that which he might have enjoyed had he been covered by a workmen's compensation act. If this were a workmen's compensation act case American would be entitled to recover over against Gulf, if the injured workman had a right of action against Gulf, United States Fidelity & Guaranty Co. v. Elam, 1955, 198 Tenn. 194, 278 S.W.2d 693; and, by analogy, American should be accorded similar rights in this case. The maritime law, under circumstances similar to those alleged here, authorizes recovery over from one primarily liable. See Standard Oil Co. v. Robins Dry Dock & Repair Co., 2 Cir., 1929, 32 F.2d 182, and Petition

2. See 33 U.S.C.A. § 178; 33 CFR § 80.16 (h). The title of the relevant subchapter reads: "Navigation Requirements for Certain Inland Waters." It provides: "Scows not otherwise provided for in this section on waters described in paragraph (a) of this section shall carry a white light at each end of each scow, except that when such scows are massed in tiers, two or more abreast, each of the outside scows shall carry a white light on its outer bow, and the outside scows in the last tier shall each carry, in addition, a white light on the outer part of the stern. The white light shall be carried not less than 8 feet above the surface of the water, and shall be so placed as to show an unbroken light all around the horizon, and shall be of such a character as to be visible on a dark night with a clear atmosphere at a distance of at least 5 miles."

3. Laches also was asserted as a defense by Gulf but this defense was not passed on by either this court or the court below.

of L. Boyer's Sons Co., 2 Cir., 1928, 25 F.2d 602.

Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 1952, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 is not relevant to these issues for in that case the shipowner's negligence concurred with that of the shoreside contractor in causing injury to the contractor's employee.

For the reasons stated, I conclude that this phase of the case also should be remanded to the court below for trial of the issues presented.

For these reasons I must respectfully dissent from the refusal of the court to grant the petition for rehearing on the issue last referred to herein.